THE CHICAGO SUBURBAN WATER AND LIGHT COMPANY

*v.*

DAVID A. HYSLOP.

*Opinion filed April 18, 1907—Rehearing denied June 6, 1907.*

1. PLEADING—*when proof of custom of warning linemen before turning on current is not a variance.* . A declaration alleging that the plaintiff was ordered by the defendant's superintendent to take hold of and shake a certain electric light wire, and that the plaintiff was unaware that the wire was then charged with an electric current, is broad enough to admit proof that the insulation of the wire was defective, and that it was the custom of the defendant to warn men doing outside work before the current was turned on, and that, except on dark days, it was not customary to have the current turned on at the time of day the injury occurred.

2. TRIAL—*when questions of contributory negligence and of assumed risk are properly left to the jury.* Whether a lineman was

negligent or assumed the risk of injury in taking hold of a live wire at the direction of the defendant's superintendent, who could not see the wire, are questions properly left to the jury notwithstanding the defective insulation of the wire was obvious, where there is evidence that the plaintiff had just previously put in the fuse plug but saw no sparks, which indicated to him there was no current in the wire, and that it was customary to warn linemen before the current was turned on, and that it was not usual to have the current turned on at that time of day.

3. INSTRUCTIONS—*when instruction is properly refused.* In an action by a servant against the master for damages for a personal injury to the plaintiff, an instruction which practically directs a verdict for the defendant if the jury find the facts therein recited to have been proved is properly refused, where it takes from the consideration of the jury proper evidence going to the question of the plaintiff's contributory negligence and his assumption of the risk of injury.

CARTWRIGHT, J., dissenting.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a judgment in favor of appellee for $4000 damages for a personal injury to appellee alleged to have resulted from the negligence of the appellant, his employer. The facts were briefly stated by the Appellate Court, as follows:

"Defendant operated an electric light plant, and had as a part of its plant a pole at the corner of Erie and Grove streets, Oak Park, at the top of which was a transformer. A primary high potential current of electricity was carried to the transformer by a circuit running from the dynamo, was changed in the transformer by induction to a low potential secondary or service current, which was carried from the transformer by a circuit to which the lamps were attached. The wire which ran from the dynamo was connected with the induction coil in the transformer by what

is by the witnesses called a 'fuse' or 'fuse plug.' The fuse or fuse plug consisted of the fuse box, which was a part of the transformer, of a fuse plug, which fitted into the fuse box and could be taken out and put back, and of the fuse proper, which was a narrow strip of fusible metal intended to connect the end of the wire which ran from the dynamo with the end of the wire which formed the induction coil. When this strip of metal is melted the circuit is broken and the fuse is said to be 'blown.' Plaintiff, when he was hurt, was nineteen years old, had been in the employ of the defendant a year and a half, and during the six months preceding his injury had considerable experience in 'trouble shooting' or 'chasing trouble,'—that is, in repair work on the lines of defendant. July 19, 1902, between four and five in the afternoon, Mr. Privat, the chief electrician of defendant, took plaintiff in his buggy at the power house and went to hunt for a break in defendant's lines. They went to the pole above referred to, and plaintiff, by order of Privat, climbed the pole, found that a fuse in the transformer had been 'blown,' so told Privat, who directed the plaintiff to put in a new fuse. Plaintiff took out the plug, put a new fuse in it and pushed the plug back into the fuse box. Privat then asked plaintiff in which circuit he found the fuse out. Plaintiff answered, in the circuit running east from Grove avenue. Privat could not see the wires distinctly from the ground where he was, and told plaintiff to shake the wire that connected the fuse that was out. Plaintiff took hold of the wire to shake it and a current of electricity passed through his body, and he fell to the ground and received the injury complained of. The wire which the plaintiff caught hold of had been insulated at one time, but the insulation was then defective and had been in that condition for a long time."

Wood & Oakley, (Horace S. Oakley, and Albert M. Kales, of counsel,) for appellant.

THEODORE G. CASE, (BENJAMIN D. MAGRUDER, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant contends that a verdict should have been directed by the trial court in its favor, first, because the evidence so conclusively showed appellee guilty of negligence that no other conclusion could be reached by reasonable minds; second, because the evidence clearly showed appellee assumed the risk of injury; and that under the evidence these were questions of law for the court and not of fact for the jury. These questions have been preserved for review in this court by motions made on the trial at the conclusion of plaintiff's evidence and again at the conclusion of all the evidence, to direct a verdict in favor of appellant. With the questions thus preserved it becomes our duty, not to weigh and determine conflicting testimony, but to examine the evidence to determine whether there is any testimony, with all the inferences reasonably to be drawn therefrom, fairly tending to establish the plaintiff's case. While, ordinarily, the questions of negligence and of assumed risk are questions of fact to be submitted to a jury, yet where the facts admitted or conclusively proven are such that all reasonable minds must reach the same conclusion, then they become questions of law. (*Wabash Railway Co.* v. *Brown,* 152 Ill. 484.) "The weight of the evidence is a question for the jury, but whether there is any evidence fairly tending to support a cause of action is a question for the court." *Chicago and Alton Railway Co.* v. *Pettit,* 209 Ill. 452.

Appellee and William Lossin were the only witnesses who testified in his behalf as to the facts upon which his right to recover depends. Appellant offered no witnesses except B. L. Dodge, its manager, who had no personal knowledge of how the injury occurred. His testimony was very brief and principally as to formal matters. We have

carefully read all of the evidence from the abstract and some of it from the record. The substance of the most material parts of appellee's testimony may be stated as follows: He was nineteen years old at the time of his injury and had worked for appellant nearly two years. He had had no experience with electricity before he began working for appellant. He was first put to reading meters and doing inside work in helping to wire houses. After he had been in appellant's employ a year he was sometimes ordered to do "trouble work" or "trouble shooting," which the witnesses explain to mean repairing and correcting outside lines. Mr. Privat, appellant's chief electrician, took him, on the day of his injury, to the place where said injury occurred, to find and correct some trouble that existed with one of the circuits. It was a drizzly, rainy day. While remedying the difficulty appellee was injured in the manner set forth in the statement of facts above quoted from the Appellate Court opinion.

Appellee testified that when employees were working on the wires outside, appellant's manager or chief electrician would tell them when the current was turned on; that when a plug which has been fused is inserted in place, if the current is on, it will make sparks. When he inserted the plug, after fusing it, he said, on direct examination, there were no sparks at all, and that indicated to him there was no current on the line. On cross-examination, in answer to the question, "Did you look for a spark?" he said, "No; I did not see any." He further stated, on cross-examination, that the company would tell employees when it turned the current on; that it was sometimes turned on early on dark days. The appellee was unable to state just where he took hold of the wire at Mr. Privat's direction. He said he just reached out with his right hand and caught it. He knew it was dangerous to take hold of a live, uninsulated wire with the naked hand. He did not remember whether he looked to see if the insulation was in good condition at the

place he took hold of the wire. If he had looked he could have seen whether it was covered with insulation or not. He stated he saw the insulation was off at the wire connections, but that he did not take hold of the wire at the point of connection. The connections were right next to the cross-arms, and he was unable to state whether he came in contact with the bare connections. Appellant was in the habit of furnishing rubber gloves to employees who were expected or required to work with or about live wires. With such gloves there was little or no danger in handling wires charged with electric currents. Appellee had no rubber gloves to use while performing the work at the time of his injury, and says Mr. Privat had none in the buggy.

William Lossin testified he was in the employ of appellant at the time appellee received his injury; that about a month before that time he had climbed the pole appellee fell from, and that the insulation of the wires there was in poor condition; that it was torn and hanging down and where the connections were made there was no insulation. He further testified that appellant did not need the power in the daytime, which its employees knew; that when the current was to be turned on they were informed of it by the superintendent or chief electrician; that repairs on the line were made between seven in the morning and half-past five in the evening, while the current was turned off. He also testified that the current was sometimes turned on at five o'clock, sometimes six, sometimes six-thirty; that it all depended on the weather; that if it was a dark day it would be turned on at three, four or half-past four o'clock, and this was all known to the men working for appellant.

Appellant insists that the proof shows such a defective condition of the insulation of the wires as to be obvious and apparent to anyone in the exercise of reasonable care, and that if appellee did not know of such condition it was due to his want of care, and that if he did see and know of such condition he assumed the risk of injury in attempting to use

the wires. It must be borne in mind that while there is proof to the effect that on dark days the current was turned on as early as five o'clock or earlier, yet the proof tends to show this was not the regular practice, and that except on account of dark days there was no current so early in the day. Under this state of the case should it be said, as a matter of law, that by taking hold of the defectively insulated wire with the naked hand appellee was guilty of negligence or assumed the risk of injury thereby, and his right to recover therefore should have been determined by the court and not submitted to the jury? It should also be borne in mind that appellee was acting under the directions of appellant's chief electrician in doing what he did, and even if such directions were not of a compulsory character and if made without actual knowledge on the part of said electrician of the defective condition of the insulation, this must be considered, in determining whether appellee was guilty of negligence or whether he assumed the risk, in connection with the appellee's own knowledge that the current was not usually turned on at such an early hour, and the further proof that when the men were working on the outside lines they were notified before the current was turned on. There is no proof tending to show he knew there was any current in the wire. He testified there were no sparks, or that he did not see any, when he inserted the fuse plug, and that this indicated to him there was no current. He does not appear to have had any other means for determining whether there was a current on the wire, and no suggestion was made by Mr. Privat that he make any attempt to discover whether there was a current, or even that there was a possibility of the wire being charged. True, if the wire had been properly insulated it could have been handled with safety with the naked hand, and so it could also without any insulation if it had not been charged with an electric current.

It is said by counsel in their very able and ingenious argument, which we have read with interest, that there is

no evidence to show appellant sent out to notify men, wherever they might be working on the lines, that the current was about to be turned on. It is true, no one testified as to how such notice was given, but appellee and Lossin testified that notice of the fact was given employees by appellant. The weight to be given to this evidence was a question for the jury.

It is claimed by appellant that the declaration did not count upon a custom to warn employees that the current was to be turned on and the failure to observe that custom, but that this was the case made by the proof. It is claimed this is such a departure in the proof from the allegations of the declaration that the trial court should have directed a verdict for that reason. The declaration charged that appellee was ordered by appellant to take hold of and shake the wire, and that he was unaware at the time that said wire was charged with and carrying a current of electricity. There does not appear to have been any objection made on the trial to the introduction of the proof offered by appellee on the ground that it was incompetent under the allegations of the declaration, and we are of opinion if any such objection had been made it could not have been sustained. The averments of the declaration were sufficient to authorize the proof introduced, both as to the condition of the insulation on the wire and as to appellant's custom and practice with reference to turning on the current in the daytime. We conclude, therefore, there was no error in submitting the case to the jury.

Complaint is made of the refusal of the twentieth instruction asked by appellant. Said instruction is as follows:

"The jury are instructed that if they believe, from the evidence, that the wires of the defendant company at the time and place of the accident in question were in a dangerous condition and that the plaintiff's injury was a result of that dangerous condition, then, if the jury further believe, from the evidence, that such dangerous condition, if any,

which existed was one of the usual and ordinary dangers to which persons in the employ of the defendant company in the capacity in which the plaintiff in this case was employed were exposed, and that the plaintiff was sufficiently experienced in the duties of his position to be aware, by the exercise of ordinary observation, of such ordinary and usual dangers, and that the plaintiff in this case, at the time of the accident in question, was in the discharge of the usual, customary and ordinary duties of his employment, then the plaintiff assumed the risk of such dangerous condition, if any, of the defendant's wires, and your verdict must be for the defendant, even though you further believe, from the evidence, that the plaintiff was ordered to take hold of the wire in question by the superintendent of the defendant company present at the time, and that said superintendent of the defendant company knew of the dangerous condition, if any, of the said wires and failed to warn the plaintiff."

It is earnestly argued that the correctness of this instruction is sustained by *McCormick Harvesting Machine Co.* v. *Zakzewski,* 220 Ill. 522. We think there is a plain distinction as made by the proof in that case from the case made by the proof here. In the *McCormick Harvesting Machine Co. case* the testimony showed that the plaintiff knew, or by the exercise of his ordinary senses should have known, of the dangers attending the work he was directed by the defendant to do. Such is not the case here. If it be conceded, as was held by the Appellate Court, that appellee must have known of the defective condition of the insulation, it was still a question to be left to the jury to determine from the proof whether there was a custom and practice of appellant to notify employees before turning on the current in the daytime, and if there was such custom, whether appellee was justified in relying upon it and obeying the order to take hold of the wire. The instruction complained of, if given, would have been understood by the jury as taking

that question from them and to have practically directed a verdict for appellant. We are of opinion that under the facts of the case the instruction was properly refused.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting.