## Stefano Paietta et al., Plaintiffs in Error, v. Illinois Zinc Company, Defendant in Error.

### Gen. No. 5061.

1.  MINES AND MINERS—*section 18 (b) of act construed.* This statute does not mean that a mine manager must be personally present at all times while conditions are being made safe. The statute is observed if the men who enter the mine to change unsafe conditions shall do so under the direction of the mine manager.

2.  MINES AND MINERS—*what essential to recovery for wilful violation.* In order for a violation of the Mines and Miners Act to give a cause of action to the person injured or to the relatives, the violation of the statute must have been the cause of the injury.

3.  MINES AND MINERS—*when failure to mark dangerous place will not support recovery.* Held, that failure to place a danger mark upon a rock was not the proximate cause of the death of the plaintiffs' intestate but that such death was caused by his standing beneath such rock while knocking out the prop which supported it and while engaged in the business of causing it to fall.

Action in case. Error to the Circuit Court of La Salle county;

the Hon. Edgar Eldredge, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

B. P. Barasa and J. L. Murphy, for plaintiffs in error.

McDougall, Chapman & Bayne, for defendant in error.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Louis Paietta was killed by the fall of a rock from the roof of an entry in a coal mine operated by the Illinois Zinc Company at Oglesby, in La Salle county. His parents, residents of Italy, sued the company to recover damages for the death of their son, and alleged wilful violations of chapter 93 of the Revised Statutes, relating to Mines and Miners. At the trial of the case, at the close of plaintiffs' evidence, a verdict was returned for defendant by direction of the court. A motion for a new trial was denied and the company had a judgment on the verdict, and plaintiffs below prosecute this writ of error to review said judgment.

Carline was mine manager and DuBois was night boss and mine examiner. Paietta was what was known as a company man, and had been working in the mine about six months, and had done almost every thing in the mine, except timbering, track laying and mining coal. The business of the company men was to clean up the roads and ways after the coal miners had left the mine at the end of the day, to clean up any falls which might have occurred during the day, and if the entries were not high enough, to take down enough of the roof to make them of proper height, and generally to put the mine in condition for work by the miners next morning. When DuBois went on duty at about four o'clock in the afternoon of February 26, 1906, Carline directed him to cause the bottom of a certain rock in a certain entry to be blasted off so as

to increase the height of the entry at that place. Du-Bois went to the rock and marked thereon the place where the rock should be drilled. About seven o'clock he went to another part of the mine where Paietta and another company man, named Blow, were at work, and directed them to go to the rock in question, drill a hole in it at the point marked by him, charge it and explode it. He did not expect them to do this immediately, but expected them to do the work in which they were then engaged and then to have supper, which was' usually eaten between seven and eight o'clock, and then to blast off the rock referred to. About nine o'clock he went to the rock and found that his directions had been obeyed and that Paietta was at work loading up the rock which had been blasted off, and that Blow was getting his machine ready to drill another hole in said rock for the purpose of blasting off more of it. The evidence leaves it uncertain whether that was the last time DuBois was there before the accident, or whether he returned again a few minutes later and then went away. Before he went away for the last time, he noticed that another rock in the roof near by the one upon which the men were working had become in a dangerous condition as the effect of the blast. One edge of this rock rested on the rib and the other on a "gob" or wall that had been built up of material in the mine, and it was supported by a prop or timber near its center, and it had been loosened on one side by the blast. Before DuBois left the men he told them to clean up the rock that was down in the floor of the entry and that Blow should drill a second hole, but that before they blasted that hole they should take down this other rock. He took a pick in their presence, and sounded the rock, and told them that it was bad, and told them to be careful in taking it down as it was very bad rock. He told this to both Paietta and Blow. He then went away, and when they were ready to take this second rock down Blow went 30 or 40 feet away to get oil to fill his lamp, and Paietta

started to take down this second rock and began by striking the prop with a sledge. When Blow saw that Paietta was going to strike the prop he called out to him, "Look out for that rock, it is bad." Paietta struck the prop two blows, and the prop and the rock then fell, and the rock fell upon Paietta. Blow tried to lift the rock off from him, and could not, and went for help, and while he was gone Paietta got out from under the rock by his own efforts, but his head was badly injured and he died before he could be removed from the mine.

Section 18 (b) of the Mining Act directs that no one shall be allowed to enter the mine to work therein, except under the direction of the mine manager, till all conditions have been made safe. The first count of the declaration charges a wilful violation of that provision. Paietta entered and worked in the mine that night under the direction of the mine manager, and no recovery could be had under that count. The statute should not be interpreted to mean that the mine manager must be personally present at all times while the conditions are being made safe, for that would be impracticable. There must often be many places in the mine which require repairs and work at the same time to make all conditions safe, and the statute cannot mean that there must be as many mine managers as there are places which require repair on any given night. The statute means that the men who enter and work in the mine to change unsafe conditions existing shall do so under the direction of the mine manager, and that was the case here.

Section 16 (d) requires that the mine manager shall see that all dangerous places are properly marked. Section 18 (b) requires the mine examiner to place a conspicuous mark where any dangerous conditions exist. The other counts of the declaration charge wilful violations of these provisions. DuBois was both night mine manager and mine examiner. The danger mark used in this mine was a cross made by white chalk on

the dangerous place. When DuBois discovered that this second rock was dangerous, and ordered Paietta and Blow to take it down, and told them to be careful in taking it down because it was a bad rock, he did not place any danger signal upon it. Plaintiffs in error contend that it was his positive duty to place such a mark upon that rock; that no oral warnings he could give would take the place of this required statutory signal; that his failure to so mark the rock was wilful, within the meaning of the law; and also that Paietta may not have understood his verbal warning. Paietta was an Italian and spoke French and some English but not Lithuanian. Blow was a Lithuanian and spoke English, but not French or Italian. DuBois did not speak Italian, but spoke English and could speak French. When he gave an order to Paietta in English, which the latter did not fully understand, Paietta was accustomed to ask him in French what the order was and DuBois would then repeat it in French. DuBois gave the orders on this occasion in English only. Blow understood them. It is argued that Paietta may not have understood the warning, and that he was entitled to have his attention called to the danger by the danger mark.

If this rock had fallen upon Paietta while he was walking along the entry or engaged in other work in the entry at that place, there would be much force in this position. But the rock did not fall upon him while he was doing anything of that kind. There is nothing to show that the rock would have fallen at that time if Paietta had continued at other work. But Paietta was engaged in the work of taking down the rock. No danger signal was required by statute to inform a company man that when he was taking down a rock it would fall as soon as its supports were removed. He could not fail to know that the purpose of the prop was to support the rock, and that when it was removed the rock was liable to fall. The duty upon which he was engaged was to make the rock fall down.

No danger signal was required by statute to tell him that it would fall upon any person who stood under it when it came down. As the rock fell upon him just as the prop went out, it is evident that he stood directly under the rock while he knocked out the prop. In order for a wilful violation of this statute to give a cause of action to the person injured or to the relatives, the violation of the statute must have been the cause of the injury. We are of opinion that it cannot be justly said that the failure to place a danger mark upon this rock caused the death of Paietta, but rather that his death was caused by his standing underneath the rock while knocking out the prop which supported it, and while engaged in the business of causing it to fall.

We conclude that the proof did not establish a cause of action under any count of the declaration.

The judgment is therefore affirmed.

*Affirmed.*