DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1910.

---

### Charles Ranney, Appellee, v. Chicago & Alton Railroad Company, Appellant.

1. NEGLIGENCE—*when acts constitute negligence.* The alleged negligent act or omission must be the cause which produces the injury complained of, but it need not be the sole cause nor the last or nearest cause to constitute it the proximate cause of such injury.

2. NEGLIGENCE—*how question of proximate cause determined.* Ordinarily, the question as to what is the proximate cause of the injury is one of fact to be determined by the jury.

3. MASTER AND SERVANT—*what not proximate cause of injury.* Held, under the evidence that the intervening negligence of one whom the evidence tended to show was a vice principal was not the immediate and sole proximate cause of the injury.

4. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A servant cannot be held to have assumed the risk of injury from a danger not known to him which he is not shown to have had opportunity to observe and of which he was not informed by his master.

5. INSTRUCTIONS—*ignoring defenses.* An instruction which directs a verdict for the plaintiff upon the finding of negligence is erroneous if it ignores affirmative defenses relied upon by the defendant which the evidence tends to establish.

6. INSTRUCTIONS—*argumentative in form.* Instructions argumentative in form should not be given.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1909. Reversed and remanded. Opinion filed October 18, 1910.

(104)

PATTON & PATTON, for appellant; SILAS H. STRAWN, of counsel.

WILLIAM ST. J. WINES, for appellee.

PER CURIAM.   This is an action on the case by the plaintiff against the defendant to recover damages for personal injuries alleged to have been sustained through the negligence of the defendant as charged in the third amended and fifth counts of plaintiff's declaration.   A trial by jury in the Circuit Court of Sangamon county resulted in a verdict and judgment against the defendant for $3,500 from which judgment the defendant prosecutes this appeal.

The fifth count charges in substance that on December 6, 1908, the defendant was possessed of and was operating a certain coaling station on the line of its railroad, and that the plaintiff was in its employ in attending to the loading of certain elevators with coal, the filling of certain bins with coal after the same had been hoisted to said bins, and such other work and labor in and about said coaling station as he might be directed to perform; that in the discharge of his said duties it became necessary from time to time for the plaintiff to ascend from the ground level to a certain landing a distance of about 60 feet, and that it was the custom of the defendant at such times to carry the plaintiff from the ground level to the said landing by means of certain cages or elevators; that it was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, but the defendant not regarding such duty then and there negligently failed to furnish the plaintiff a reasonably safe place in which to work, in this, that it caused and permitted a certain timber to be erected and fastened across one of its elevator shafts during a temporary absence of the plaintiff from his said duties and employment, whereby said elevator shaft was rendered a dangerous and unsafe place in which to work, which

said condition was known or by the exercise of or-
dinary care on its part might have been known to
the defendant, but was unknown and by the exer-
cise of ordinary care on his part could not
have been known to the plaintiff; that the de-
fendant then and there ordered the plaintiff to
get upon one of its said cages for the purpose afore-
said; that while in the exercise of ordinary care for
his own safety and without knowledge of the dangerous
condition aforesaid the said cage was hoisted by the
defendant past said landing without stopping thereat
to give the plaintiff a chance to alight. and on up to
within a few inches of said timber, whereby, by rea-
son of the dangerous place provided by the defendant
in which the plaintiff was required to perform a part
of his work as aforesaid, he was caught between the
said cage and said timber and thereby injured, etc.
The third count as amended and filed at the close of
plaintiff's evidence alleges the same facts with greater
particularity, and, in addition, charges, that it be-
came and was the duty of the defendant to have dis-
closed to the plaintiff the extra and increased hazard
created by it during plaintiff's absence by reason of
said timber erected and fastened across said shaft and
to have informed the plaintiff of such extra and in-
creased hazard before requiring him to perform the
duties whereby he would be subjected to said extra
and increased hazard; that the defendant not regard-
ing its duty in that behalf, negligently and carelessly
failed and neglected to disclose to the plaintiff the
extra and increased hazard, but then and there ordered
the plaintiff to get upon one of said cages at the ground
level and ascend to the top level for the purpose of
ascertaining whether one of said bins was filled with
coal, and while the plaintiff was in the line of his
duty and in the discharge of his said employment
towards the defendant, and while acting in pursuance
of said order, and in the exercise of ordinary care
for his own safety, the defendant hoisted said cage

Ranney v. Chicago & Alton R. R. Co., 158 Ill. App. 104.

on which the plaintiff was riding up to and even with said coal chute, whereby, by reason of the erection of said timber across said shaft and the failure of the defendant to disclose to or warn the plaintiff thereof, he was injured, etc.

In general the plant designated as a coal elevator consisted of coal bins located on the east and west sides of appellant's railroad track connected by an enclosed platform or runway extending across said track and a tower on the west side of said track, in which tower cages carrying coal were operated in slides by motive power communicated by a gasoline engine to cables which ran from the engine room over sheave wheels located in the top of the tower, and to which cables said cages were attached. Upon the railroad track beneath the said runway and between the coal bins were placed loaded coal cars with drop bottoms, so that the coal might be discharged from said cars into an excavated hopper or sump below the level of the track. The cages which carried the coal from the sump to the coal bin or platform above ran alternately up and down the slides in the north and south sides of the tower, so that when one cage was drawn up to its extreme height in the tower where the coal was automatically dumped by a trip into the coal bin or into cars in the runway to be thus conveyed to the coal bin on the east side of the track, the other cage was below ground level in the sump, where it received the coal from the hopper. There were two places designated as landings, one being at the ground level where the bucket could be stopped as it came up from the sump, and the other being at the platform in the tower on a level with the floor of the runway which extended across the track. The runway extending across defendant's railroad track was equipped with a double track upon which small cars were operated by machinery located on the platform in the portion of the tower where the north cage came through the platform as it ascended to the trip above. The floor of said platform in the tower was 53 feet

above the ground level and the extreme height of the tower above the ground was about 88 feet. It was occasionally necessary for employes of the defendant to go to the platform and thence into the runway to do such work as might be required, and a ladder extending from the ground to said platform was provided for the use of such employes, in ascending to and descending from said platform, but to avoid the labor of climbing such ladder said employes customarily ascended to and descended from said platform by means of the cages, and for this purpose the south cage was ordinarily used, because at the place where it passed through the said platform there was no obstruction such as existed at the place where the north cage passed through said platform. The plaintiff entered the employ of the defendant on November 27, 1908, and continued in such employment four days, when he was temporarily laid off by reason of the necessity of making some repairs or changes in the plant by the original contractors, whereby said plant might be conformed in some particulars with the provisions of the contract therefor. During the time following plaintiff's temporary laying off and December 5, 1908, when he resumed work, the original contractors, for some purpose not disclosed by the record, had placed two beams transversely across the shafts or slides in the tower in which the cages were operated, at a point in said tower about 13 feet above the platform; so that when the cages reached the tripping blocks there was only a space of approximately two feet between said beams and the top of the cages. On the day plaintiff resumed work and during the forenoon of December 6, being the day following, he made several trips by means of the cage operated in the south slide or shaft, and during the forenoon of the last named day he claims that he was directed by the engineer in the employ of the defendant to ascend to the platform by means of the cage operating in the north slide or shaft, for the purpose of ascertaining whether or not one of the bins was filled with coal.

When the said cage reached the first or ground landing plaintiff got into it for the purpose of ascending to the platform landing. The engineer failed to stop said cage at the platform landing so as to enable the plaintiff to alight there, and he was thereby carried up a distance of about 13 feet where he was brought into contact with the beams before mentioned, whereby he received the injuries complained of.

At the close of the evidence for the plaintiff and again at the close of all the evidence defendant offered its peremptory instructions which were refused by the court. The action of the court in refusing peremptorily to instruct the jury to find the defendant not guilty is urged as being erroneous, because it is said the evidence does not tend to prove that the presence of the beams in the tower was the proximate cause of the plaintiff's injury. The alleged negligent act or omission must be the cause which produces the injury complained of, but it need not be the sole cause nor the last or nearest cause to constitute it the proximate cause of such injury. Seith v. Commonwealth Elec. Co., 241 Ill. 252. The contention of the defendant, that the act of Allen, the engineer, in failing to stop the cage at the upper landing to enable the plaintiff to alight there, and in hoisting said cage to a point in the tower where the plaintiff was brought into contact with the beams, was the immediate and sole proximate cause of the injury, is not tenable. In Seith v. Commonwealth Elec. Co., *supra*, it is said: "When the act of a third person intervenes which is not a consequence of the first wrongful act or omission and which could not have been foreseen by the exercise of reasonable diligence and without which the injurious consequence could not have happened, the first act or omission is not the proximate cause of the injury. The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence and if so, the connection is not broken, but if the act of the third person which

is the immediate cause of the injury is such as in the exercise of reasonable diligence would not be anticipated, and the third person is not under the control of the one guilty of the first act or omission, the connection is broken and the first act or omission is not the proximate cause of the injury." The conduct of Allen in the respect mentioned cannot be availed of by the defendant as constituting a wholly independent act and the sole proximate cause of the injury to plaintiff, because Allen was in the employ and under the control of the defendant and as the evidence tends to show was a vice-principal having authority to direct the plaintiff in the performance of his work. The negligence alleged in the two counts of the declaration is the failure of the defendant to exercise reasonable care to furnish the plaintiff with a reasonably safe place in which to work, and the failure of the defendant to warn the plaintiff of the existence of an increased hazard in the place where he was required to perform his work. Whether or not the negligence of the defendant in either of the respects charged was the proximate cause of the injury to plaintiff, notwithstanding the negligent act of Allen may have concurred in producing the injury, was a question of fact for the jury, and the trial court did not err in refusing the peremptory instructions offered by the defendant. The case of Yunkes v. Latrobe Co., 131 Ill. App. 292, relied upon by counsel for defendant, is not in point, because the injury which resulted in that case was occasioned by the wholly independent act of a stranger to the defendant.

It is insisted that the verdict of the jury upon the issue of an alleged warning or direction by Allen to the plaintiff not to use the cage as a means of ascent to the platform is so clearly against the great preponderance of the evidence as to demand a reversal of the judgment. If the question was determinable by a consideration solely of the number of witnesses who testified upon that issue we should have little hesitancy in concluding that the plaintiff was warned or directed

by Allen not to use the cage and that a verdict to the contrary upon that issue should not be sustained. Allen testified that during the forenoon of the day on which the plaintiff was injured, he climbed the ladder to the platform where the plaintiff, Niesen and Stevens were at work and advised or directed them not to use the cage in ascending to and descending from the platform, because the clutch blocks were not operating properly. Niesen corroborated Allen in this particular, and further testified that when they descended from the platform they did so by means of the ladder. Stevens testified that Allen notified the men on the platform not to ride on the cage, that it was dangerous to do so, and that if they did so it would be at their own risk. This witness fixed the time of said conversation as being in the afternoon of the day on which plaintiff was injured, and further testified that he had no recollection that Allen assigned as a reason for the danger to be apprehended from riding on the cage, that the clutch blocks were defective or out of order. The plaintiff denied that he was given any such instructions by Allen or that he heard any such instructions given. The plaintiff further testified that he made about 20 trips on the cage immediately preceding his injury and there is no denial of his testimony in that regard. He further testified that upon the occasion of his injury when the north cage was at the lower platform Allen said to him, "Buddy, get on that cage and go up and see how full this bin is, and see how many cars we can put into the east one," and he said, "Let that one go on up and send the other one down and I will go up on the other one;" that Allen replied, "It looks awfully funny and I'm getting damned tired of running these cages up and down to accommodate you fellows. I can stop this one as easy as I can stop the other." Allen denied that he told the plaintiff to ride up on the cage but admitted that he ordered the plaintiff to go up and see if the bin was full, and that he knew that plaintiff went up on the cage in response to such

order. It is not claimed that Allen then protested in any way against the use by the plaintiff of the cage in ascending to the platform. The conduct of Allen in impliedly acquiescing in the use by plaintiff of the cage on the occasion in question is wholly inconsistent with the claim that previous to that time Allen had directed the plaintiff not to use the cage, except upon the theory that the danger to be apprehended in the use of the cage had been obviated in the meantime. No reason is apparent why Allen might not have warned the workmen upon the platform as to the danger of riding on the cage from his position on the ground 60 feet below, and that he should have climbed a 60 foot ladder upon a cold day for the mere purpose of communicating a warning which might as well have been communicated without such effort on his part, tends to discredit his testimony in that respect. We are not prepared to say after a careful consideration of all the evidence and the circumstances in evidence bearing upon that issue that the finding of the jury that no such warning was given to the plaintiff as is claimed is palpably wrong.

Upon the issue as to whether or not the plaintiff rode upon the north cage in obedience to an order from Allen the verdict of the jury must, upon the evidence in this record, be held to be conclusive.

The contention of defendant that the plaintiff must be held to have assumed the risk arising from the presence of the beams in the tower finds no substantial support in the evidence. After the placing of said beams in the tower, with knowledge of which the defendant was chargeable, it does not appear that the plaintiff had occasion or opportunity to observe the presence of the beams and it is not claimed that the defendant informed the plaintiff that the beams had been placed in the tower.

While the plaintiff was riding on the cage up to and within the enclosed tower for the purpose of performing the duty imposed upon him by the defendant, such

cage and tower became and was his working place, and the duty was imposed upon the defendant to exercise reasonable care to make said cage and tower reasonably safe for his use, or if the danger arising from the presence of the beams in the tower could have been avoided by warning the plaintiff of the presence of such beams, it was the duty of the defendant to so warn the plaintiff. It is clear from the evidence that if the plaintiff had had notice of the presence of said beams in the tower he could have avoided the danger incident to the hoisting of the cage above the landing by stepping to one side of the cage.

The accuracy of the 3rd, 4th, 5th, 6th and 8th instructions given at the instance of the plaintiff is challenged upon the ground that they each assume that the plaintiff was the servant of the defendant to whom as such servant the defendant owed certain duties notwithstanding a claim on the part of the defendant that the plaintiff at the time of his injury was loaned *pro hac vice* by the defendant to an independent contractor, who then had possession of the plant for the purpose of making certain alterations and testing its efficiency. Without discussing the evidence in detail it is sufficient to say that it wholly fails to support the claim of the defendant in the respect mentioned. It is conclusively established by the evidence that when the plaintiff resumed work at the elevator, after he had been laid off for several days in order to enable the independent contractor to make certain alterations and repairs, he did so solely at the instance of the defendant, and that the work he thereafter performed and which he was performing at the time of his injury was performed by the direction of the defendant and was identical in character with the work which he had performed prior to the time he was temporarily laid off. In this state of the record no harm resulted to defendant by ignoring the existence of a relation wholly unsupported by any substantive evidence in the case. It is further urged against instructions 3, 6 and 8 that they ignore the evidence in the record

of the alleged warning to the plaintiff not to ride in the cage. The 3rd instruction which directs a verdict negatives the assumption by the plaintiff of the risk involved and requires that the plaintiff on the occasion of his injury should have been in the exercise of ordinary care for his own safety. These elements in the instruction fully covered the defense interposed by the defendant of a warning to the plaintiff. The 6th instruction does not direct a verdict but by necessary implication the defense of a warning to the plaintiff not to ride in the cage was included in the requirement that he was ordered to ride in said cage and was so riding therein pursuant to such order. The instruction further requires that the plaintiff shall have been in the exercise of due care for his own safety on the occasion of his injury. The 8th instruction relates to the fellow-servant rule and directs a verdict. It was doubtless intended by the reference in the instruction to the fifth count of the declaration to require the jury to find all the essential allegations of that count in favor of the plaintiff by a preponderance of the evidence but the phraseology employed authorizes the jury to return a verdict for the plaintiff upon proof merely by a preponderance of the evidence, "that the plaintiff was injured by reason of the fact (if it is a fact) that the defendant failed to use ordinary care to furnish him a reasonably safe place to work, as charged in the fifth count of the declaration." As the instruction directs a verdict for the plaintiff upon proof merely of the single fact that the defendant failed to use ordinary care to furnish the plaintiff with a reasonably safe place in which to work it necessarily excludes from the consideration of the jury all the other allegations of the declaration, proof of which was essential to a recovery. We are wholly unable to agree with the contention of counsel for plaintiff that the language employed in the instruction is equivalent to, or may reasonably be construed as requiring the plaintiff to prove his case as

alleged in the fifth count of the declaration, or that plaintiff was injured as alleged in the fifth count of the declaration. The instruction as given was clearly prejudicial to defendant and was not cured, if indeed it could be, by any other instruction given in the case. Mooney v. City of Chicago, 239 Ill. 414.

The 1st instruction offered at the instance of defendant and refused by the court was properly refused as being argumentative and infringing upon the province of the jury. The 8th and 10th instructions given at the request of the defendant fully covered so much of the first refused instruction as was proper to be given to the jury.

For the error in giving the 8th instruction tendered on behalf of the plaintiff the judgment must be reversed and the cause remanded.

*Reversed and remanded.*