## John Driza, Appellee, v. Jones & Adams Coal Company, Appellant.

1. MINES AND MINERS—*when question whether sufficient props were furnished is for the jury.* In an action for injuries received because of alleged wilful violation of the Mines and Miners Act in failing to furnish sufficient timbers and props on request, it is a question of fact for the jury whether sufficient props were furnished where one witness testifies that he was in the room before the accident and that there were no props in the room not set up and two testify that they saw the room before and after the accident and that there were no props or timbers there and on the other hand four witnesses testify that there were props and cross bars in the room before the accident which could have been used.

2. MINES AND MINERS—*when miner cannot recover for injuries.* A miner injured by the falling of slate cannot recover if he was only allowed to enter the mine under the direction of the mine manager to prop the roof of his room and to make it safe.

3. MINES AND MINERS—*when question for jury whether miner entered mine as miner or as company man.* It is for the jury to

say whether a miner when injured had been allowed to enter the mine as a miner of coal or as a company man under the direction of the mine manager where the evidence is conflicting whether he got his "life check" from the usual place or whether he got it from the company's office with a memorandum of the condition of his room attached thereto and whether he received instructions from the mine manager to timber his room.

4. MINES AND MINERS—*what term "miner" ordinarily means.* As ordinarily accepted the term "miner" includes all laborers in a mine whether digging coal or timbering and making places safe.

5. INSTRUCTIONS—*requisites of instruction directing verdict.* An instruction purporting to state the facts necessary to recovery and directing a verdict for the plaintiff on finding such facts should not ignore an affirmative defense which is supported by evidence and which if established would defeat recovery.

6. INSTRUCTIONS—*when directing verdict cannot be supplemented.* A defective instruction directing a verdict cannot be supplemented by another.

7. INSTRUCTIONS—*when instruction directing verdict will reverse.* In an action for injuries caused by alleged wilful violation of the Mines and Miners Act, it is reversible error to give an instruction which directs a verdict but does not refer to a defense, supported by evidence that the plaintiff was a company man working at making conditions safe when the injuries were received.

8. INSTRUCTIONS—*when misleading in use of word miner.* Where the defendant alleges that the plaintiff was injured while working under the direction of the mine manager, an instruction is misleading which uses the term "miner" without distinguishing between a miner working at his calling and one entering the mine and working under direction of the mine manager to make conditions safe.

Appeal from the Circuit Court of Sangamon county; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the May term, 1911. Reversed and remanded. Opinion filed March 15, 1912.

BROWN, WHEELER, BROWN & HAY and JOHN T. CREIGHTON, for appellant; MASTIN SHERLOCK, of counsel.

WILLIAM J. LAWLER and T. J. SULLIVAN, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Appellee recovered a judgment for $2,850.00 against

appellant in the Sangamon County Circuit Court for an injury sustained by him Monday, March 7, 1910, by a fall of slate from the roof of his room while working in defendant's mine.    The declaration contains several counts.   In our opinion, recovery can be had only under the second or sixth counts.   The second count alleges a violation of clause (a) of Section 16 of the Mining Law, in that the mine manager wilfully failed to provide a sufficient supply of props, caps and timbers, delivered at the usual place when demanded, in suitable lengths and dimensions for securing the roof. The sixth count avers that in the room where plaintiff worked, there was an unsafe roof and that by the statute it is provided that no one shall be permitted to enter into the mine to work therein, except under the direction of the mine manager, until all conditions have been made safe; that in violation of the said · provision defendant allowed plaintiff to enter said mine to work therein not under the direction of the mine manager.   The count, however, describes the section of the statute as clause (c) of Section 16 of the Miner's act, while the proper description of this provision is clause (b) in Section 18 of the act.

Appellee commenced work in room 10 as a miner about a month before the accident.   The room was then about 100 feet long and ten feet wide.   At the face there was a horseback, so called, running diagonally across the room.   Appellee drove the room narrow from the horseback to a point twelve feet in, and then began to widen the room.   He took eight props from near the entry and set them in a bunch close to the right hand side of the car track to support the roof. Appellee after extending the room to a width of fifteen feet drove it forward to a point fifteen to twenty-five feet beyond the location of the props.   After appellee had set up the eight props he demanded at least ten times, as he says, props, caps, timbers and crossbars from Davis, the mine manager; he also claims he

made a similar demand on Thomas Green, assistant manager, about a half a month after he began work. Appellee claims no attention was paid by the mine manager or assistant manager to his demands and that on the day of the injury none of the demanded and required props, etc., had been furnished. Appellant's defense to that count is that Driza was furnished with sufficient props, timbers, etc., to properly support his roof, and that when Driza entered the mine on the morning of the injury he went as a company man, so called, under the direction of the mine manager, Davis, to make safe the dangerous condition of the room.

With reference to the demand for timbers, in addition to Driza's testimony, Martin Titus testified he heard Driza order props and all kinds of timbers from Davis early in the week before he was hurt, and again the Saturday morning before the injury. Davis and Green both testified that no demand was made by Driza for props and timbers. As to whether or not the necessary props and timbers were supplied the evidence is conflicting.

On the part of appellee, in addition to his own testimony, Burkhardt, a driver, who was in Driza's room on the morning previous to the injury, testified that there were no props or timbers there not set up, and John Papulauskas testified he was in the room Saturday previous to the injury and on the following Monday and saw no props, timbers, crossbars or anything of the kind. Martin Titus testified he was in Driza's room Monday both before and after the accident and that there were no props or timbers, in fact nothing at all.

On the part of appellant there is evidence that there were eight props in that room that were not set up. Davis, the manager, and Green, assistant manager, William Tillie, a surveyor's helper, and Pavelick, a shot-firer, testified that on the day of the injury there were props and crossbars in appellee's room which

he could have used to support the roof. It was a question of fact for the jury to decide from the evidence whether or not sufficient props and timbers had been furnished in accordance with Driza's demand.

The defense of appellant most earnestly urged, however, is that appellee was not working in the mine at the time he was injured, as a miner proper as that term is used in the Mines and Miners Act, and as the term is popularly understood, but that when he entered the mine he entered as a company man under the direction of the manager, Davis, to make safe a dangerous place; that the mine inspector, Voiseley, had inspected Driza's room about 2:30 o'clock A. M. on that day and found the place needed timbering and that the roof was drummy and unsafe, and that he put a danger mark in chalk on the brow of the room about ten or twelve feet from the face, and made a report for the manager at the company's office and also another report which was kept in a shanty at the foot of the shaft; that his report as to the room stated, "slate down; cross timbers needed at the face;" that he took Driza's "life check" off the board where it was placed by Driza and left it with a memorandum of the condition of the room in the company's office. Davis testified that at seven o'clock A. M. March 7th, Driza came for his life check, and that he told Driza that, "He had a little slate down and that his place needed timbering and to go in there and timber his place and clean the place up, clean the slate up," and handed him his life check. The bookkeeper, Stafford, testified that he heard a conversation between Driza and Davis on the morning of the 7th about the check for his room, but could not remember the words. Driza testified that he did not get his check from the manager on the morning of the 7th, but from its usual place.

It is urged by appellee that even if Davis' testimony is true, that his statement to Driza when he handed him the "life check" did not convert Driza into a com-

pany man, and that Davis' directions were in the nature of instructions as to his duties in taking care of his room as provided in Section 16 of the Mines and Miners Act, and that it was in no sense a direction by the mine manager to make a dangerous place safe.

"Where an employe in a mine is injured while in the performance of the duty of putting in necessary props and making surrounding conditions safe, he cannot recover of a mine owner by virtue of the several provisions contained in the Mines and Miners Act compliance with which he was engaged in making." Kellyville Coal Co. v. Bruzas, 223 Ill. 595; Gallatin Coal Co. v. Andrewzewski, 137 Ill. App. 1; Cappelin v. Jones and Adams Coal Co., 164 Ill. App. 267. In Paietta v. Illinois Zinc Company, 153 Ill. App. 506, it was held that the statute does not require that the mine manager must be personally present at all times, while conditions are being made safe. The statute is observed if the men, who enter the mine to change unsafe conditions, shall do so under the direction of the mine manager. Appellant contends that appellee's situation is brought within the purview of that case and for that reason he is not entitled to recover. If Driza when injured was not in his room to work therein except under the direction of the mine manager, but had only been permitted to enter the mine for the purpose of propping up his room under the direction of the mine manager and making it safe then there can be no recovery. It was a question for the jury to say from all the evidence whether appellee when injured had been permitted to enter the mine as a miner mining coal or as a company man and was working under the direction of the mine manager making conditions safe.

With the case showing such a conflict in the evidence the court gave the following instruction:

"The court instructs the jury that if the jury be-

lieve from a preponderance of the evidence that the plaintiff on the 7th day of March, A. D. 1910, was in the employ of the defendant as a miner, and engaged and at work at his said employment in the tenth room of the fifth B east entry, off the first B south entry in the mine of the defendant and that said room prior to the injury to the plaintiff needed props, caps and timber to support the slate at the roof of said room at a place where plaintiff was required to work therein and that there was not in said room any props, caps and timber to secure the roof at said place where plaintiff was required to work, and that the plaintiff had demanded or ordered props, caps and timber of the mine manager of the defendant, and that the mine manager of the defendant wilfully failed to furnish said props, caps and timber, delivered at the usual place, for the securing of the roof of said room, and that such wilful failure of the mine manager of the defendant to furnish such props, caps and timber as above mentioned, after such demand, was the proximate cause of the injury to the plaintiff, then the jury will find for the plaintiff."

This instruction directs a verdict if certain facts are shown by the evidence. It contains no reference to the defense urged by appellant, that the appellee was a company man working at making the room safe under the direction of the mine manager, a defense that there is evidence to support.

The term "miner" in its ordinarily accepted meaning includes all classes of laborers who work in a mine whether digging coal or timbering and making places safe. An instruction for a plaintiff, which purports to state the facts essential to a recovery and. directs the jury to find a verdict for the plaintiff on finding such facts, should not ignore an affirmative defense, which there is evidence tending to prove and which, if established, would defeat a recovery. Mooney v. City of Chicago, 239 Ill. 414; Chicago Suburban W. & L. Co. v. Hyslop, 227 Ill. 308; Illinois Iron and Metal Co. v.

Weber, 196 Ill. 526; Boden v. Kewanee Coal & Mining Co., 157 Ill. App. 484; Ranney v. Chicago & Alton R. R. Co., 158 Ill. App. 104. It is also the law that an instruction directing a verdict cannot be supplemented or cured by any other for the reason that if the jury read and obeyed it they would find for the plaintiff, although they might believe the defense urged was proved. Mooney v. City of Chicago, (*supra*); Ranney v. C. & A. R. R. Co., (*supra*). The instruction was misleading in the use of the term miner without distinguishing between a miner working at his calling and a miner entering the mine and working under the direction of the mine manager making conditions safe. The giving of the instruction directing a verdict without reference to the defense which there was evidence tending to prove was reversible error. The judgment is reversed and the cause remanded.

*Reversed and remanded.*