## Andrew Letz, Appellee, v. Kolb Coal Company, Appellant.

1. MINES AND MINERALS, § 133*—*when miner disobeying orders may not recover for injuries.* Where a miner is ordered by his mine manager to remove a dangerous condition in a working place in the mine, and, instead of doing so, he proceeds to mine coal therein and is injured in so doing, he cannot recover for such injuries.

2. MINES AND MINERALS, § 82*—*when employee is a company man and not a coal miner.* Where plaintiff's working place as a miner in defendant's coal mine was marked dangerous by the mine examiner, and when plaintiff was given his entrance check on the following day he was ordered by the mine manager to remove the dangerous portion, *held* that plaintiff thereupon entered the mine not as a coal miner but as a company man to remove such condition, and would not be entitled to the protection of the Mining Act as a miner or digger of coal.

3. MINES AND MINERALS, § 176*—*when verdict in action for personal injuries is against weight of evidence.* Verdict *held* against the manifest weight of the evidence, in an action by a coal miner to recover damages for personal injuries sustained while working in defendant's mine.

Appeal from the Circuit Court of St. Clair county; the Hon. GEORGE E. CROW, Judge, presiding. Heard in this court at the October term, 1916. Reversed and remanded. Opinion filed April 13, 1917.

WILLIAM E. WHEELER, for appellant.

THOMAS R. MOULD and BARTHEL, FARMER & KLINGEL, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was brought by appellee in the Circuit Court of St. Clair county, to recover damages for personal injuries sustained by him while working in appellant's mine. The action is based on the Mines

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

& Miners' Act, the declaration charging that appellee demanded certain props and cap pieces to make safe his working place, and that appellant, contrary to the statute, wilfully failed and omitted to furnish the same. Appellant filed a plea of not guilty. A trial was had resulting in a verdict and judgment in favor of appellee for $6,000. To reverse said judgment appellant prosecutes this appeal.

The record discloses that appellee is a certified miner of experience, having worked for many years in the mines of Europe and of this country. For some months prior to his injury, appellee and his buddy had been driving the entry in which the injury occurred and had worked back for some four hundred feet to a width of twenty-one feet. The roof over this entry was composed of loose slate or stone, some four or five inches thick, and above which appears to have been a solid rock top. The loose slate and stone had been removed from the roof of the entry within a few feet of the face of the coal, leaving the solid rock roof above.

On the morning of December 22, 1914, the mine examiner examined this entry, found loose slate and stone extending out about nine feet from the face of the coal, placed danger marks thereon and took up the checks of appellee and his buddy, and gave them to the mine manager with a report of the dangerous condition of the roof. When appellee and his buddy appeared for work that morning the mine manager delivered their checks to them and instructed them to pull down the loose slate and stone from the roof. This, the record discloses, they did not do, but instead thereof mined out more coal. On the following morning the mine examiner again examined the entry before appellee and his buddy went to work; found about twelve feet of loose slate and stone exposed on the roof in a dangerous condition, and again marked the

place dangerous as provided by statute. The mine examiner again took up the checks of appellee and his buddy, delivered them to the mine manager, reported the place dangerous and directed that the loose slate and stone be taken down. When appellee came to work that morning he applied to the mine manager for his check and the manager gave him his check and directed him to pull down the loose roof. Appellee testified that when he called for his check that morning and the preceding morning he asked the mine manager for props to hold up the roof and testified that the mine manager did not say yes or no, but directed him to pull down the loose slate and stone, but that they were unable to do so; that they went to work loading up coal that had been shot down the previous night; that they had loaded one box and started to set up the drill to start drilling when the roof fell, causing the injury for which appellee seeks to recover.

It is contended by appellant that the verdict of the jury is against the manifest weight of the evidence and that said cause should be reversed with a finding of facts.

The record discloses that the mine examiner fully complied with the requirements of the statute in marking the dangerous condition in the entry of the working place of appellee and in taking up his entrance check and delivering same with proper report to the mine manager. In fact, appellee practically concedes as much in his brief and argument. The record also discloses that the mine manager withheld appellee's check and delivered it to him on the morning of December 23rd and again on the morning of December 24th with specific instruction to pull down the loose slate and to remove said dangerous condition. In so doing said mine manager fully complied with paragraph 4 of section 20 of said Mines & Miners' Act (J. & A. ¶ 7494).

Appellee on his direct examination was asked the following question: "Q. Did you get your check that morning before you went down in the mine? A. The boss gave me the check. Q. What did he say, if anything, when he gave you the check? A. He told me to pull the slate down." On cross-examination appellee was asked this question: "Q. Now Mr. Killian then told you at that time when you got your check from him that the roof was loose and to pull it down, didn't he? A. After he gave me the check he said 'tear the slate down.'" This further question was asked appellee on cross-examination, "Q. Didn't Mr. Killian tell you to take down the slate? A. Yes, he said that when he gave me the check number, 'pull down the slate.'"

On the part of appellant, its mine manager testified that at the time he delivered appellee his check on the mornings of the 23rd and 24th of December, 1914, he specifically directed him to pull down the slate in the entry in which appellee and his buddy were working, and that he made no promise to appellee, directly or indirectly, to furnish props.

After the mine examiner had marked the roof in said entry, dangerous, it became "unlawful * * * to enter the place against the danger signal without permission of the mine manager," and it was unlawful for appellee to disobey the order of the manager, to take down the dangerous roof. Paragraph (e) of section 23 of said Mining Act (J. & A. ¶ 7497).

The law further is that when appellee discovered the dangerous condition of the roof in his working place it became his duty not to work therein except to make such dangerous condition safe. Paragraph (c), section 23 of said Act (J. & A. ¶ 7497).

The record also discloses that when appellee applied to the mine manager for his entrance check on the morning of the day he was injured, the only order

received by him was to take down the dangerous roof in his working place. He was not told to mine coal or anything else except to pull down the slate, for which the evidence discloses he would have been paid at the rate of thirty-three cents per hour.

Appellee contends, however, that he requested of the mine manager that he be furnished with seven-foot props for use in making safe the dangerous condition in said mine. He does not testify, however, that said mine manager agreed to furnish said props, but says that he made no reply thereto. One of the witnesses on behalf of appellee testified that the mine manager, in response to the request of appellee, shook his head up and down. So far as the evidence discloses no props were necessary in carrying out the instructions of the mine manager, and, in fact, if appellee had followed said instructions no props would have been necessary. The county inspector of mines, who was a witness on behalf of appellee, testified it was safer to remove the roof in question than to prop it, and that seems to have been the method employed in this particular entry. The record also discloses that appellee after making an unsuccessful attempt to remove the loose roof went to work in said entry, preparatory to shooting down coal in violation of the mine manager's instructions and contrary to his statutory duty. Paragraph (e), section 23 of said Mining Act.

Under the holding of the Appellate Court of the Third District in the cases of *Cappelin v. Jones & Adams Coal Co.*, 164 Ill. App. 267, and *Driza v. Jones & Adams Coal Co.*, 171 Ill. App. 139, appellee did not enter appellant's mine as a digger of coal on the morning of the injury, but he entered said mine as a company man under definite instructions from the mine manager to remove a dangerous condition, and while occupying such position would not be entitled to the protection of the Mining Act as a miner or digger of coal.

Where a miner is ordered to remove a dangerous condition in a working place, and instead of doing so proceeds to mine coal therein and is injured in so doing, he cannot recover. *Piazzi v. Kerens-Donnewald Coal Co.*, 262 Ill. 30; *Arkley v. Niblack*, 272 Ill. 356.

In *Piazzi v. Kerens-Donnewald Coal Co., supra,* at page 35 the court says: "The conditions under which a miner may work at a dangerous place at his own risk are where the owner has complied with the law by having the mine examined, the dangerous place has been marked by the mine examiner, and the miner is sent to that place, by the direction of the mine manager, to make safe the particular dangerous conditions there existing." The language of the Supreme Court in said cause is peculiarly applicable to the case under consideration for the reason that the record conclusively discloses that appellant had complied with the law by having the mine examined, the dangerous place marked by the mine examiner, and the mine manager had directed appellee to make safe the particular dangerous condition therein existing.

In *Cappelin v. Jones & Adams Coal Co., supra,* the court at page 269 says: "At the time of the accident his relation to the defendant was not that of a miner engaged in digging coal, as alleged, but that of an employee under direction to assist in repairing and making safe a dangerous place. *Coke Co. v. Andrewsewski,* 137 Ill. App. 1. Having been assigned to the latter duty, for which he was to receive special compensation by the hour, it was his duty to continue in the performance of the same until his work was completed. The defendant had the right to assume that he would do so. He had no right to change his status by digging coal or working at the face of the room while he was being paid as a company man. After the defendant had assigned him to the work in question, it was manifestly not its duty to place a guard over him to see that he did not mine coal until the place had

been made safe. To hold that he was at liberty, without notice to the defendant, to change at will, from one capacity to the other, and thus place himself alternately within and without the protection of the statute, would be manifestly unjust to the defendant. If he chose to depart from the employment which he willingly and knowingly assumed, whatever may have been his motive, without first notifying the mine manager, he cannot claim the protection of the statute.''

The evidence, both on the part of appellee and of appellant, is conclusively to the effect that appellant's mine manager directed appellee to make the dangerous place safe in his working place, and the manifest weight of the evidence is to the effect that no promise, directly or indirectly, was made by appellant's mine manager to furnish props as contended for by appellee. Appellee having seen fit to disobey the order received by him from the mine manager to make safe the dangerous place in his working place, and seen fit to mine coal in violation thereof, he did so at his own risk.

We hold, therefore, that the verdict of the jury is against the manifest weight of the evidence, and that the judgment of the Circuit Court should be reversed therefor. Other errors were assigned by appellant, but in view of what we have said, it is not necessary for us to discuss the same.

The judgment of the Circuit Court is reversed and cause remanded.

*Reversed and remanded.*