ALBERT SEITH, Appellee, *vs.* THE COMMONWEALTH ELEC-
TRIC COMPANY, Appellant.

*Opinion filed April 23, 1909—Rehearing denied October 19, 1909.*

1. TRIAL—*what tends to show negligence with respect to electric wire.* In an action against an electric company for injuries inflicted upon the plaintiff by a shock from a fallen live wire, testimony that the insulation was loose and hanging in threads, that a kite had hung on the wire for a week or two and that there were no guard wires to keep broken wires from falling, tends to show negligence by the defendant as respects thè falling of the wire; and the fact that the testimony is contradicted cannot be considered by the court on a motion to direct a verdict.

2. NEGLIGENCE—*negligent act need not be sole cause to be the proximate cause.* To constitute proximate cause the negligent act or omission need not be the sole cause nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, produces the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous sequence, unbroken by a new or independent cause.

3. SAME—*injury must be natural and probable result of negligent act.* While it is not necessary, to constitute proximate cause, that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, yet it must appear that the injury was the natural and probable result of his negligence; and the question is not determined by the existence or non-existence of intervening events, but by the character thereof and the natural connection between the original act and the injurious consequences.

4. SAME—*when existence of condition is not proximate cause.* If a negligent act does nothing more than furnish a condition by which an injury is madè possible, and such condition, by the subsequent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury.

5. SAME—*when act of third person does not excuse wrongdoer.* If the intervening cause of an injury is set in operation by the original negligent act or omission, such original negligence is still the proximate cause, and if the circumstances are such that the injurious consequences might have been foreseen as likely to result from the original negligent act or omission, the act of the third person will not excuse the original wrongdoer.

6. SAME—*when the first negligent act is not proximate cause.* Where the act of a third person, which is the immediate cause of

an injury, is such as in the exercise of reasonable diligence would not be anticipated, and the third person is not under the control of the one guilty of the first negligent act or omission, the connection between the first negligence and the injury is broken and the first negligence is not the proximate cause.

7. Same—*test in determining the question of proximate cause.* The test in determining the question of proximate cause is whether the person guilty of the first negligent act or omission might have reasonably anticipated the intervening cause as a natural and probable result of his own negligence, and, if so, the connection between such negligence and the injury is not broken by the intervening cause.

8. Same—*electric company is liable for injury resulting from effort to remove danger of live wire.* An electric company may reasonably anticipate, in case a live wire should fall upon the sidewalk or where persons using the sidewalk or roadway are likely to be injured, that someone may attempt to remove it to prevent injury, and if, as a result of such attempt, some other person is injured, the company is liable.

9. Same—*when electric company is not liable for injury from live wire.* Where a live wire, which has just fallen between the sidewalk and the curb of a street, where it would do no injury to a person on the sidewalk or roadway, is struck by a policeman with his club and thrown upon a person standing on the sidewalk, the company owning the wire is not liable for the injury to such person, there being no explanation of the policeman's act and no negligence imputable to the company in not removing the wire before the injury but only in not preventing the wire from falling.

Vickers and Carter, JJ., dissenting.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. Clifford, Judge, presiding.

F. M. Cox, F. J. Canty, J. C. M. Clow, and E. E. Gray, for appellant:

Even if plaintiff's evidence be true, it shows that no act on the part of the defendant was a proximate cause of the injury. The act of the police officer in striking the wire, as plaintiff claims he did, was, under the circumstances and

the conditions as they existed there, so uncalled for, unnecessary and without excuse that it must be considered an independent, intervening act and the sole proximate cause of plaintiff's injury. *Wolff Manf. Co.* v. *Wilson,* 152 Ill. 9; *Fitzgerald* v. *Timony,* 34 N. Y. Supp. 460; *Railway Co.* v. *Hedge,* 62 N. W. Rep. 887; *Wallace* v. *Oil Co.* 66 Fed. Rep. 260; *Cross* v. *Railway Co.* 36 Pac. Rep. 673; *Rockford* v. *Tripp,* 83 Ill. 247; *Brown* v. *Railway Co.* 20 Mo. App. 222; *Course* v. *Railway Co.* 2 N. Y. Supp. 312.

Morse Ives, for appellee:

The fact that the defendant's wire was down, hanging loose in the public street, is *prima facie* evidence of defendant's negligence. *Haynes* v. *Gas Co.* 114 N. C. 203; *Linton* v. *Power Co.* 188 Mass. 276; *O'Leary* v. *Light Co.* 107 App. Div. 505; *Electric Co.* v. *Simpson,* 21 Colo. 371.

The negligence of the defendant concurred with the act of the policeman. The injury to the plaintiff followed naturally from the negligent act of the defendant, and the defendant might readily have anticipated that some injury might result to somebody, in some manner, by reason of a heavily charged electric wire falling and remaining in a public street. *Carterville* v. *Cook,* 129 Ill. 152; *Car Co.* v. *Laack,* 143 id. 242; *McGregor* v. *Reid, Murdoch & Co.* 178 id. 464; *Armour & Co.* v. *Golkowska,* 202 id. 144; *Railroad Co.* v. *Harrington,* 192 id. 10; *Electric Co.* v. *Rose,* 214 id. 545; *Traction Co.* v. *Wilson,* 217 id. 47; *Siegel, Cooper & Co.* v. *Trcka,* 218 id. 559; *Railroad Co.* v. *Siler,* 229 id. 390; *Flanagan* v. *Wells Bros. Co.* 237 id. 82; *Kansas City* v. *Gilbert,* 65 Kan. 469.

The following cases not only support the principle we contend for, but are very similar in their facts to the case at bar: *Kansas City* v. *Gilbert,* 65 Kan. 469; *Lundeen* v. *Light Co.* 17 Mont. 32; *Twist* v. *Rochester,* 37 App. Div. 307; *Smith* v. *Telephone Co.* 113 Mo. App. 429; *Telephone Co.* v. *Thomas,* 99 S. W. Rep. 879.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Albert Seith, brought this action on the case in the circuit court of Cook county against the appellant, Commonwealth Electric Company. The declaration in various counts charged the defendant with a failure to use ordinary care to guard, protect and maintain a wire used for the transmission of electricity over a public sidewalk in the city of Chicago, and using wire that was frail and weak, and allowing the insulation to become worn, and negligently allowing the wire to come in contact with another electric wire, causing it to break and one end to fall upon the sidewalk. It was alleged that the plaintiff, while walking on the sidewalk and exercising due care and caution, came in contact with the wire and was thereby injured. The defendant filed a plea of the general issue, and upon a trial there was a verdict and judgment for $4000 damages, and the judgment has been affirmed by the Appellate Court for the First District.

The question raised by the brief and argument of counsel is whether the trial court erred in refusing to direct a verdict for the defendant.

The evidence was to the following effect: The city of Chicago granted a license to the defendant to suspend its wires over certain streets, and one condition was that the wires should be properly insulated, and all overhead conductors should be protected by guard wires or other suitable mechanical device or devices. A line of the electric wires ran south on the west side of Noble street from a pole at the south-west corner of its intersection with Grant avenue, a street running east and west. The next pole south on Noble street was about one hundred feet distant. There were four cross-arms on the poles and the wires of the defendant were on the top cross-arm. They had been up about eight or nine months, and the insulation was the same

kind ordinarily used and was good when the wires were strung. On August 19, 1903, two of the defendant's wires were burned off between these two poles, and the wire which caused the injury to plaintiff fell on the ground between the sidewalk and the roadway, near the middle of a space about five or six feet wide, about twenty feet north of the second pole and near the south end of a building at the corner in question. A policeman was getting off a Noble street car at the street intersection and saw the wire drop, and two little girls, who were thirteen years old at the time of the trial, in 1907, were coming out of an alley south of said corner building and saw the wire which had just fallen, while it was still in motion. Afterward it laid still on the ground. The first floor of the building on the corner was occupied by a saloon, and the plaintiff lived in a flat in the third story of that building. The two children went to the front door of the saloon on Grant avenue and told the saloon-keeper that a live wire was broken and had fallen to the ground. The children had come around to the side door near the rear, on Noble street, and two policemen who were in the saloon when they gave notice came out and one of the policemen went where the wire was lying. The policeman who had just got off the street car went into the saloon and ordered a glass of beer. About the time that the policeman went where the wire was, the plaintiff came down from his flat by the back stairs at the rear of the building, carrying a pail. The disputed question of fact was whether the plaintiff then picked up the wire or whether it was thrown on him by one of the policemen. The two children testified that as the plaintiff was walking south on the sidewalk, the policeman who stood by the wire struck it with his club and knocked it toward the sidewalk, and that the plaintiff caught it with his hand and brought it against his breast and fell down, with his head to the west and his feet to the east, on the space between the walk and the roadway. The plaintiff said that he did not notice any wire, but saw the

policeman strike at something and noticed something fly up and hit him, but did not know it was a wire until after the accident. Another witness said that he saw plaintiff come down the stairs with a pail in his hand and suddenly saw him throw up his hands, and the next instant he went to the ground. On the part of the defendant, the three policemen, a horse-shoer whose shop was south of the rear stairway, and the bar-tender, testified that the plaintiff picked up the wire himself and the policeman did not strike it. The first policeman, who ordered the glass of beer, testified that he was standing in front of a mirror in the saloon, in which he saw a man come along and pick up the end of the wire; that the witness made an exclamation and ran out of the side door across the street, where he pulled a plank off the sidewalk and ran back and tried to knock the wire out of plaintiff's hand; that he failed, and another person picked the plank up and knocked the wire out of his hand. The blacksmith testified that the plaintiff picked the wire up and pulled it through his hands until he came to the bare end, when he fell down, and that a policeman pulled a plank off the sidewalk on the other side of the street and with it knocked the wire out of plaintiff's hand. The bar-tender said that the plaintiff walked up to the wire and stooped down and took hold of it, and then straightened up and went down like a log, backwards. The policeman who was charged with striking the wire testified that plaintiff said it was not a live wire, and the witness told him to get away from it, but he walked toward it and picked it up, and that he moved his hand toward the end of the wire where it was broken, and when he reached the end he fell down. The third policeman said that the one at the wire told the plaintiff to get away from there and the plaintiff said it was a dead wire; that the officer said to leave it alone, but the plaintiff stooped down and picked it up about eighteen inches from the end and drew it through his fingers until he got to the tip end, when he fell down. A kite, made of a news-

paper dated the previous day, which had been tangled on the wires and was partly burned, was taken off, and there was evidence for the plaintiff that there had been a pink kite hanging on the wires a week or two before. There were no guard wires or other mechanical device to prevent wires from falling, and one of the girls testified that the wrappings were worn away and in threads and were loose and hanging. The evidence for the defendant was that the insulation was perfect and there were no strings or anything of the kind hanging down, and the ends of the wires showing the covering in perfect condition were cut off and made exhibits in the case. There was also evidence for the defendant that guard wires are never used except where wires cross each other, but there was no other mechanical device to protect the wires.

It is argued that this evidence required a verdict for the defendant because it did not tend to prove negligence on the part of the defendant, and because its negligence, if any, was not the proximate cause of the injury. There was no evidence tending to sustain the charge that the defendant was negligent in failing to discover and remedy the condition after the wire fell, for the reason that the accident occurred immediately. In view of the testimony of the child that the wrappings, as she called it, were loose and hanging in threads, the absence of any mechanical device to prevent wires from falling, and the evidence that there had been a pink kite on the wires for some time, it cannot be said that there was no evidence fairly tending to prove negligence. The court could not consider the evidence tending to defeat the cause of action, such as the kite made of the newspaper dated the day before, which may have caused a short circuit and fused the wire, nor the ends of the wires attached to the record to prove that the insulation was perfect. Whether the child was mistaken about the insulation, in view of the other testimony, was a question for the jury, now finally settled by the judgment of the Appellate Court.

The important question presented by the record and argued by counsel is whether the negligence alleged was the proximate cause of the injury to the plaintiff. No mention of that question is made in the opinion of the Appellate Court, but that court must have concluded that the negligence of the defendant was the proximate cause of the injury, since there could be no recovery on account of such negligence unless there was a causal connection between the negligence and the injury. The rules for determining whether a negligent act or omission is the proximate cause of an injury are well established and have been applied by different courts in numerous cases to different conditions of fact. There has been practically no difference of opinion as to what the rules are, and they may be briefly stated as follows: The negligent act or omission must be the cause which produces the injury, but it need not be the sole cause nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, causes the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous sequence, unbroken by any new or independent cause. The question is not determined by the existence or non-existence of intervening events, but by their character and the natural connection between the original act or omission and the injurious consequences. To constitute proximate cause the injury must be the natural and probable consequence of the negligence, and be of such a character as an ordinarily prudent person ought to have foreseen might probably occur as a result of the negligence. It is not necessary that the person guilty of a negligent act or omission might have foreseen the precise form of the injury, but when it occurs it must appear that it was a natural and probable consequence of his negligence. If the negligence does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent independent act of a third person, the two

are not concurrent and the existence of the condition is not the proximate cause of the injury. Where the intervening cause is set in operation by the original negligence, such negligence is still the proximate cause, and where the circumstances are such that the injurious consequences might have been foreseen as likely to result from the first negligent act or omission, the act of the third person will not excuse the first wrongdoer. When the act of a third person intervenes which is not a consequence of the first wrongful act or omission and which could not have been foreseen by the exercise of reasonable diligence and without which the injurious consequence could not have happened, the first act or omission is not the proximate cause of the injury. The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and if so, the connection is not broken; but if the act of the third person which is the immediate cause of the injury is such as in the exercise of reasonable diligence would not be anticipated and the third person is not under the control of the one guilty of the first act or omission, the connection is broken and the first act or omission is not the proximate cause of the injury. One phase of the rule was stated in *Chicago Hair and Bristle Co.* v. *Mueller*, 203 Ill. 558, as follows: "If the negligent act and the injury are known, by common experience, to be usual in consequence, and the injury such as is liable, in the ordinary course of events, to follow the act of negligence, it is a question of fact for the jury whether the negligence was the proximate cause of the injury;" and there is a general review of the subject in Thompson on Negligence, chap. 5. In *Braun* v. *Craven*, 175 Ill. 401, the court said: "The principle is, damages which are recoverable for negligence must be such as are the natural and reasonable result of defendant's acts, and the consequences must be such as in the ordinary course of things would flow from the acts and

could be reasonably anticipated as a result thereof." In Pollock on Torts the author declares that the only rule tenable, on principle, where the liability is founded solely on negligence, is contained in the statement "that a person is expected to anticipate and guard against all reasonable consequences, but that he is not by the law of England expected to anticipate and guard against that which no reasonable man would expect to occur." (Webb's Pollock on Torts, p. 45.) Judge Cooley states the rule as follows: "If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause and refuse to trace it to that which was more remote." (Cooley on Torts,— 3d ed.—99.) In Wharton on Negligence (sec. 134) is found the following question and answer: "Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent, responsible human action." The Supreme Court of the United States, in the case of *Milwaukee and St. Paul Railroad Co.* v. *Kellogg*, 94 U. S. 469, said: "The question always is, was there an unbroken connection between the wrongful act and the injury,—a continuous operation? Did the facts constitute a continuous succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?"

The principles on which the question of proximate cause depends are illustrated by the facts of various cases in this court. In *Village of Carterville* v. *Cook*, 129 Ill. 152, a much used sidewalk elevated six feet above the ground was

unprotected by railing or other guard, and by the inadvertent or negligent shoving by one boy of another boy against the plaintiff, the plaintiff was pushed from the sidewalk and injured. That was plainly a case where the village ought to have anticipated the consequences of its negligence. In *American Express Co.* v. *Risley,* 179 Ill. 295, the express company was held liable for the consequences of placing a chute crosswise on an express car, because it could have been foreseen, by the exercise of ordinary care, that the injury which followed might result from the act. In *Garibaldi & Cuneo* v. *O'Connor,* 210 Ill. 284, where the plaintiff stepped upon a banana and fell, it was held that when the intervening cause of an injury could reasonably have been anticipated, the original negligent act, if it contributed to an injury, may be regarded as the proximate cause. In *Elgin, Aurora and Southern Traction Co.* v. *Wilson,* 217 Ill. 47, the declaration charged defendant with negligence in failing to have a switch lever locked and in failing to have the same guarded at an amusement park. There was no lock on the switch and the switch tender left his post for the attractions of a game of ball. It was held proper to submit to the jury the question whether the defendant had discharged its duty toward a passenger, although the mischievous act of a boy in changing the switch contributed to the injury. It was a case where the intervening cause of changing an unlocked and unguarded switch might reasonably have been anticipated. In *Illinois Central Railroad Co.* v. *Siler,* 229 Ill. 390, the defendant negligently set a fire, and the owner of a house, in an effort to extinguish the fire, received an injury from which she died. The defendant was bound to anticipate, when the fire started, that the decedent would try to put it out, and if in so doing, with reasonable care and caution, she was injured, the setting of the fire was the proximate cause of the injury, as a result which might be anticipated. Judge Thompson illustrates the rule by supposing a similar case. (1 Thompson on Negligence, sec.

64.)   In *True & True Co.* v. *Woda,* 201 Ill. 315, it was re-
garded as a question of fact whether the negligence of the
defendant in piling lumber on the sidewalk in a public street
where he knew the children of the neighborhood were in
the habit of playing was the proximate cause of an injury,
and this was upon the ground that the defendant should
have known the children would be likely to climb on the
lumber at play and be injured.   In *Siegel, Cooper & Co.* v.
*Trcka,* 218 Ill. 559, where the defendants were guilty of
negligence in the construction of an elevator shaft and a
boy fourteen years old was thrown down by another boy, it
was considered that the two acts of negligence both con-
tributed to the result, and clearly the defendant might rea-
sonably have anticipated what actually happened in the use
of the elevator.

On the other hand, in *Hullinger* v. *Worrell,* 83 Ill. 220,
in an action on the case against a sheriff for negligence in
suffering a prisoner to escape, the sheriff was held not liable
for damages resulting from an assault by the prisoner on
the plaintiff, because the assault was not the natural and
probable consequence of permitting the prisoner to escape
from custody, and not being anticipated was not the proxi-
mate result.   In *City of Rockford* v. *Tripp,* in the same
volume, page 247, where a horse with a cutter became
frightened and ran away, and in passing where a team was
hitched to a post set by the city for a hitching post, fright-
ened the team and caused the team to break the post and
run away and they ran over a person in the street, it was
held that a defect in the post was not the proximate cause
of the injury.   In *Wolff Manf. Co.* v. *Wilson,* 152 Ill. 9, a
barber's post insecurely fastened stood near the outer edge
of a sidewalk, and the driver of a team in backing his
wagon knocked the post over, injuring the plaintiff.   The
post, although not fastened as it should have been, would
not have caused an injury but for the act of the driver in
backing against it, and it was held the intervening cause

was the proximate cause of the injury. In *Braun* v. *Craven, supra,* the court affirmed the judgment of the Appellate Court reversing the judgment of the trial court without remanding the cause, on the ground that the condition of the plaintiff could not have been reasonably anticipated as a result of the defendant's negligence.

Applying the rules of law to this case, it is clear that the defendant might reasonably anticipate, in case a wire should fall upon the sidewalk or where persons using the sidewalk or roadway would be likely to be injured, that a policeman or some other person might attempt to remove it to prevent injury, and if in so doing, or as a result of the policeman's act, some other person should be injured the defendant would be liable, since such effort to remove the cause of danger might naturally be anticipated. Of that character are the cases relied upon to sustain the judgment. (*Kansas City* v. *Gilbert,* 65 Kan. 469; *Smith* v. *M. and K. Telephone Co.* 113 Mo. App. 429; *Citizens' Telephone Co.* v. *Thomas,* (Tex.) 99 S. W. Rep. 879.) The defendant would be liable although there was some intervening cause, if it were such as would naturally be anticipated as the result of the wire falling to the ground, but it seems inconceivable that the defendant ought to have anticipated that a policeman would throw the wire upon the plaintiff by striking it with his club when it was lying where no injury would be done by it either to a person on the sidewalk or the roadway. There is no evidence tending in the slightest degree to prove that the policeman struck the wire for the purpose of removing it as a source of danger. He testified that he did not touch it and told the plaintiff to get away from it; but assuming, as we are bound to do, that the testimony of the children was true and that he struck the wire and knocked it toward the sidewalk, that testimony did not even remotely tend to prove that he was attempting to remove the wire so as to prevent

injurious consequences. The injury to the plaintiff followed as a direct and immediate consequence of the independent act of the policeman, and but for such act any negligence of the defendant would have caused no injury to the plaintiff. In the case of *Harton* v. *Forest City Telephone Co.* 59 S. E. Rep. (N. C.) 1022, the telephone company negligently maintained a pole in a dangerous condition until it fell across a highway. Three persons passing in a hack set the pole up again in the same hole and propped it with a stick six to eight feet long, procured from a wood pile nearby. The pole afterward fell and killed the plaintiff's daughter, who was in a buggy with the plaintiff in the road, and the court held that there was no liability, since the negligence of the telephone company was not the proximate cause of the injury. If it could have been argued in that case that the telephone company might reasonably have anticipated the removal of the pole from the highway and the re-setting of it, no such argument can apply to the act of the policeman. The wire was lying between the sidewalk and the roadway, where it would injure no one, and the evidence most favorable to the plaintiff is, that the policeman struck it with his club and threw it upon the plaintiff as he was passing upon the sidewalk. The negligence of the defendant produced a condition which made the injury possible, but the injury would not have occurred but for the independent act of the policeman. That act was an independent cause of the injury by one for whose act the defendant was not responsible and by one over whom it had no control. It follows that the defendant was not liable for such act, and the negligence alleged and which the evidence tended to prove was not the proximate cause of the injury. The court ought therefore to have given the instruction directing a verdict of not guilty.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

Mr. JUSTICE VICKERS, dissenting:

I am not in accord with the conclusion reached by the majority opinion. The judgment is reversed because the trial court refused to direct a verdict for appellant. The conclusion is based on the assumption that there is no evidence fairly tending to show that the injury might reasonably have been anticipated from the negligence of appellant.

The majority opinion, after stating the facts and reviewing numerous authorities, proceeds as follows: "Applying the rules of law to this case, it is clear that the defendant might reasonably anticipate, in case a wire should fall upon the sidewalk or where persons using the sidewalk or roadway would be likely to be injured, that a policeman or some other person might attempt to remove it to prevent injury, and if in so doing, or as a result of the policeman's act, some other person should be injured the defendant would be liable, since such effort to remove the cause of danger might naturally be anticipated."

With the rule announced in the above quotation I have not the slightest quarrel. It is difficult to see how it is legally or logically possible to avoid a conclusion directly opposite to the one reached in the majority opinion consistent with the rule laid down in the quotation which I have made. The sentences immediately following the quotation show the manner in which the majority opinion seeks to avoid the logical conclusion which seems to me ought necessarily to follow from the premises previously laid down. Those sentences are as follows: "The defendant would be liable although there was some intervening cause, if it were such as would naturally be anticipated as the result of the wire falling to the ground, but it seems inconceivable that the defendant ought to have anticipated that a policeman would throw the wire upon the plaintiff by striking it with his club when it was lying where no injury would be done by it either to a person on the sidewalk or the roadway.  *  *  *  The wire was lying between the

sidewalk and the roadway, where it would injure no one, and the evidence most favorable to the plaintiff is, that the policeman struck it with his club and threw it upon the plaintiff as he was passing upon the sidewalk."

I am wholly unable to see how this language can be reconciled with the quotation first made from the majority opinion. In the first quotation it is said that the defendant ought to anticipate that the policeman might attempt to remove the wire and injure someone, and for an injury thus caused the defendant would be liable. In the second quotation it is said that if a policeman should strike the wire with his club while it was lying where it would do no injury to anyone on the sidewalk, it is inconceivable that the defendant could have anticipated an injury thus brought about. What is it that distinguishes the situation presented in the first quotation from that implied in the second? Certainly the fact that the policeman used his club instead of his hands or feet to remove the live wire is not sufficient to render the liability "inconceivable" in the last proposition and "clear" in the first. Does the fact mentioned in the second proposition, that the wire was lying where no injury would be done by it to a person on the sidewalk, make the liability inconceivable? While the majority opinion does not say so in so many words, yet there is an intimation that the wire was not immediately on the sidewalk, and for this reason the policeman should not have attempted to remove it. If this be conceded it does not help the situation. Suppose the policeman did use poor judgment in deciding to remove the wire or in selecting the means to accomplish that purpose,—or, to put it still stronger, suppose the policeman was guilty of negligence in attempting to remove the wire,—then the utmost that can be claimed is that the policeman's negligence operated jointly with the negligence of appellant in producing the injury, and if this view be taken, under the authorities cited in the majority opinion appellant is liable. If the policeman, of his own malice or wantonness, threw the wire

on appellee and intentionally injured him appellant would not be liable. There is, however, not a particle of evidence to sustain that theory and I do not understand the majority opinion to proceed upon that hypothesis. The negligence of appellant is conclusively settled by the judgment of the Appellate Court. There is no pretense that appellee was guilty of contributory negligence. At least, if that question was ever in the case, it is likewise settled by the judgment of affirmance by the Appellate Court. The only thing left, then, is the question of fact whether the injury resulted from causes which ought to have been reasonably anticipated by appellant. Under the rule first above quoted from the majority opinion there ought to be no doubt as to this question. The injury occurred by the attempt of a policeman in good faith to remove a danger from a public highway, placed there by the negligence of appellant. Applying the law to these facts, I think appellant is liable.

Mr. JUSTICE CARTER, also dissenting.